**OWEN COUNTY FARM BUREAU COOPERATIVE ASSOCIATION, INC., Indiana Farm Bureau Cooperative Association, Inc., Appellants (Defendants Below),**

v.

**H. Peter WAEGER, Appellee (Plaintiff Below).**

**No. 1–678A154.**

Court of Appeals of Indiana, First District.

Jan. 14, 1980.

Rehearing Denied Feb. 13, 1980.

Richard M. Hardy, Indianapolis, Elliott Hickam, Richard W. Lorenz, Hickam & Hickam, George B. Mathes, Spencer, for appellants.

Paul J. Watts, Spencer, for appellee.

ROBERTSON, Presiding Judge.

The Owen County Farm Bureau Cooperative Association, Inc. and the Indiana Farm Bureau Cooperative Association, Inc. (hereinafter collectively referred to as Farm Bureau), appeal from a jury award to H. Peter Waeger (Waeger) of $1,250 compensatory and $10,000 punitive damages as a result of Farm Bureau's breach of a feeder pig contract. Farm Bureau does not dispute the compensatory award. The errors preserved by Farm Bureau on appeal deal with the award of punitive damages, whether the award was excessive and supported by sufficient evidence, and the trial court's disposition of certain jury instructions. Because we reverse on the issue of punitive damages, we do not reach the other issues on the merits.

Briefly, the facts as revealed by the record show that Waeger entered into a contract with Farm Bureau to raise six lots of feeder pigs. At the end of the second lot, Farm Bureau notified Waeger that they were cancelling the contract because of poor performance and management practices exhibited during the first two lots. As a result of the cancellation, Waeger brought suit for compensatory and punitive damages. In both Waeger's complaint and amended complaint, punitive damages of $75,000 were sought "for attorney's fees, interest, costs and all other relief necessary and proper in the premises." No mention was made of malicious and oppressive conduct, heedless disregard of the consequences, or any other extraordinary basis for which a claim for punitive damages may lie.

At the close of Waeger's evidence, Farm Bureau moved to withdraw from the jury the question of punitive damages. Prior to the judge's decision on the motion, however, there was an informative exchange of dialogue between the judge and counsel for Waeger out of the presence of the jury. In summary, counsel argued that Farm Bureau exhibited oppressive conduct in terminating the contract unreasonably. When pressed to further narrow the allegation to specifics, counsel responded that there were no contacts with Waeger, no warning or indication that he was doing anything wrong, no notice of cancellation, the fact that the second lot was an improvement over the first, and the expense incurred in moving the feeder lot at the request of Farm Bureau's agent.

We are mindful that our standard of review does not permit us to weigh the evidence nor judge the credibility of the witnesses, and that we can only view the evidence and reasonable inferences most favorable to the prevailing party below. Hardin v. State ex rel. Van Natta, (1978) Ind. App., 376 N.E.2d 518. Where, however, the evidence leads to but one conclusion and the trial court has reached an opposite conclusion, the judgment will be reversed as contrary to law. From a complete review of the record, we find as a matter of law that there was no evidence from which the jury could have based an award of punitive damages. See Umbreit v. Chester B. Stem, Inc., (1978) Ind.App., 373 N.E.2d 1116; Johnson v. Taylor Bldg. Corp., (1978) Ind.App., 371 N.E.2d 404.

In reviewing the development of punitive damages as it relates to contract actions, it becomes readily apparent that the current law in Indiana is based in large part in the Indiana Supreme Court's decision in Vernon Fire & Casualty Insurance Co. v. Sharp, (1976) 264 Ind. 599, 349 N.E.2d 173. In general, punitive damages are not recoverable in a contract action. Punitive damages will be allowed, however, when there is proof of an independent tort, or conduct which is tortious in nature and when the public interest will be served by the deterrent effect that the award will have on similar future conduct. United Farm Bureau Life v. Fultz, (1978) Ind.App., 375 N.E.2d 601; State Farm Mutual Auto. Ins. Co. v. Shuman, (1978) Ind.App., 370 N.E.2d 941; Hibschman Pontiac Inc. v. Batchelor, (1977) 266 Ind. 310, 362 N.E.2d 845; Vernon Fire & Casualty, supra; Jos. Schlitz Brewing Co. v. Central Beverage Co., (1977) Ind. App., 359 N.E.2d 566.

In an attempt to give some meaning to the phrase "conduct that is tortious in nature," the courts have relied in part on Sedgwick's formulation, which appears in Taber v. Hutson, (1854) 5 Ind. 322, and that allows for punitive damages when the elements of fraud, malice, gross negligence or oppression mingle in the controversy. See Vernon Fire & Casualty, supra; United Farm Bureau Life, supra. Indiana courts have also declared that a complaint that requests punitive damages in an action for breach of contract need not contain all of the elements which must be specifically alleged for actionable fraud. It is enough if the complaint states that the act was committed with a fraudulent state of mind. Consequently, a general averment as to state of mind is sufficient. State Farm Mutual Auto. Ins., supra.

In applying these precepts to the case at bar, a thorough review of the record discloses that Farm Bureau's action fell far short of being tortious in nature. Waeger has argued on appeal that the fact that Farm Bureau sold hogs on the futures market amounts to the tort of conversion, absent express permission by Waeger. This argument lacks merit, however, since the contract called for Farm Bureau to market the finished hogs as an agent for Waeger, and to secure the best price possible, of which it was the sole judge. Consequently, if Farm Bureau determined that the futures market provided the best possible price for the finished hogs, it was within their discretion to sell the hogs in such fashion.

Although it is likewise apparent from the record that Farm Bureau may not have supplied the best supervision to the contract and were possibly not as helpful as Waeger hoped they would be, we are not persuaded that this conduct rises to the level of oppression, fraud, or malice mingling in the controversy to support an award of punitive damages. Farm Bureau paid Waeger the percentage of proceeds due him from his first two lots, as required by the contract based on the applicable feed conversion ratio. Consequently, this case does not present the situation developed in many of the cases previously cited, wherein one party withheld payment of funds properly due the other party, and which resulted in punitive damages.

We do not feel that the threat of punitive damages should be allowed to chill the assertion of a valid contract dispute or foreclose a contracting party from breaching a contract he no longer desires to consummate. See *Hibschman Pontiac, Inc. v. Batchelor*, (1976) Ind.App., 340 N.E.2d 377.[1] In a contract action, the aggrieved party has an adequate remedy in the recovery of compensatory damages.

In his complaint, Waeger alleges that Farm Bureau's agent said that the third lot of hogs would arrive in about three weeks and after that, Waeger received a letter informing him of the cancellation of the contract in "wanton disregard" of Waeger's contract rights. We agree that there was a breach of the contract between Farm Bureau and Waeger, but we do not agree that the breach was in "wanton disregard" of Waeger's rights under the contract. This case is unlike those wherein the relationship involved is one of insured/insurer, vendor/purchaser, or consumer/merchant. This was a contract between two businessmen. Although the contract was a standard form used by Farm Bureau, there is no allegation of unconscionability, or that Waeger did not understand the terms contained therein. If that were the case, our decision might well be different. Here, however, Waeger was aware of the terms and familiar with the rights and duties accorded each party, under the contract. At the conclusion of the second lot of hogs, Farm Bureau, in the exercise of their business judgment, concluded that continuing the contract with Waeger was not in their best interest. If punitive damages were allowed in cases of this nature, the courts would only be encouraging litigation. *Monte Carlo, Inc. v. Wilcox*, (1979) Ind. App., 390 N.E.2d 673. We also fail to see, how in this situation, the public interest will be served by the award of punitive damages.

In this case, the jury awarded Waeger $1,250 in compensatory damages. The record reveals no evidence of an independent tort separate from the contract. Similarly, there is no evidence of fraud, malice, gross negligence, or oppressive conduct mingling in the controversy. The complaint does not even state that the act was committed with a fraudulent state of mind. Waeger also received full payment for the two completed lots. Therefore, the basis for awarding punitive damages in contract actions as set forth in *Vernon Fire & Casualty, supra*, has not been met, and Farm Bureau's motion

---

1. Although the Indiana Supreme Court granted transfer and remanded to the trial court for remittitur of part of the punitive damage award, 266 Ind. 310, 362 N.E.2d 845, we have cited to the court of appeals opinion merely for background reference.

for judgment on the evidence as to the punitive damage issue should have been granted. Consequently, we reverse the allowance of punitive damages and order judgment for the defendant-appellants.

Reversed and remanded.

NEAL and RATLIFF, JJ., concur.