Harry MONTGOMERY, Appellant,

v.

In the Matter of the Supervised Administration of the ESTATE OF Cynthia S. MONTGOMERY, a/k/a Cynthia S. Matter, Deceased, Appellee.

No. 75A03–9604–CV–133.

Court of Appeals of Indiana.

March 5, 1997.

K. Edwin Applegate, Applegate, McDonald, Koch & Arnold, Bloomington, for Appellant.

Steven M. Bush, Millbranth and Bush, Valparaiso, for Appellee.

## OPINION

GARRARD, Judge.

Harry Montgomery ("Montgomery") appeals the trial court's denial of his petition for a partial distribution of his share of the real estate. We affirm and remand to the trial court for further proceedings consistent with this opinion.

### FACTS AND PROCEDURAL HISTORY

Cynthia S. Montgomery, a/k/a/ Cynthia S. Matter ("Cynthia"), died testate on June 2, 1993 while domiciled in Starke County, Indiana. She was survived by Montgomery, her second husband with whom she had no children, and her adult children, Shelli Matter, Stacey Sult and Steven Matter, all born of a prior marriage. At the time of her death, Cynthia had real property consisting of her home and her business, the Knox Beauty College. Her personal property consisted of her furniture and household goods, a bank account, an automobile, jewelry, and other miscellaneous personalty.

On June 15, 1993, Cynthia's estate was opened as an unsupervised estate with Shelli Matter as personal representative. Montgomery filed a notice to take against the will as well as a notice of election to take survivor's allowance. In August 1993, Montgomery filed an objection to the unsupervised administration and in September 1993, an agreed order was entered changing the estate to a supervised estate. In October 1993, the trial court approved a verified report of

sale of real estate which sold Cynthia's former residence for $52,500 with selling expenses of $3,675.00.

On July 9, 1994, the trial court granted Steven Matter's petition for appointment of successor personal representative and appointed Steven Matter and Toni Palm as successor co-personal representatives. On July 29, 1994, the estate filed a motion to freeze the estate checking account which was granted. On September 16, 1994, the trial court ordered Shelli Matter to pay the estate $32,521.91.[1]

On June 5, 1995, Montgomery petitioned for an estate and business accounting, indicating that it was necessary for him to "ascertain what he shall receive from the estate." (R.112). On June 30, 1995, the trial court approved the sale of the real estate and business which constituted the Knox Beauty College.[2] On July 25, 1995, the trial court entered a nunc pro tunc order requiring the sale proceeds to be held in an interest bearing account.

On August 2, 1995, Montgomery filed a brief supporting his request for an allocation of funds from the sale of the real estate and the estate responded. On September 13, 1995, Montgomery filed a petition for an accounting and for sanctions and attorney fees to which the estate filed a response on September 18, 1995. On October 2, 1995, the estate filed an interim accounting, asset disclosure and creditor listing. On October 5, 1995, a judgment in favor of the estate and against Shelli Matter was entered and the deed on the sale of the real estate and business was approved.

■ On November 20, 1995, Montgomery filed a petition requesting partial distribution. On December 12, 1995, the estate filed a response objecting to such; the co-personal representatives filed a proposed final accounting; and the trial court held a hearing on the petition. On December 29, 1995, the petition was denied. The trial court found:

1. That Harry Montgomery is a second subsequent childless spouse of the decedent, Cynthia S. Montgomery;

2. That Harry Montgomery has elected against the Will pursuant to I.C. § 29–1–3–1;

3. That pursuant to said section he is entitled to one-third (1/3) of the lands of the testator;

4. That the life estate in one-third (1/3) of the lands of the testator is a net estate subject to the payment of claims as set forth in the classification of claims in I.C. § 29–1–14–9;

5. That the second subsequent childless spouse does not have a priority status of any kind over other heirs of [sic] devisees such that he should receive his one-third (1/3) of the net personal estate of the testator plus a life estate in one-third (1/3) of the lands of the testator prior to final distribution of the estate, which would occur after payment of the various items set forth in I.C. § 29–1–14–9;

6. That pursuant to the authority of *In Re Estate of White*, 651 N.E.2d 324 (Ind.App.1995), the value of Harry Montgomery's life estate in one-third (1/3) of the lands of the testator should be determined as of the date of transfer of each of the parcels of real estate involved, and as set forth in I.C. § 29–1–14–9;

7. That the Court notes that the intent of the Legislature appears to be that a second subsequent childless spouse not be given any priority over any other heir or devisee, but that the language of the Probate Code, as written, creates confusion in that it creates the impression that the life estate in one-third (1/3) of the lands of the testator that the second subsequent childless spouse has upon his election to take against the Will is a priority over ev-

---

1. Both the estate's motion and the trial court's order stemmed from Shelli Matter's unauthorized spending from the estate account.

2. The Knox Beauty College business and real estate was originally appraised for $285,000.

Subsequently, it was reappraised for $175,000. Ultimately, the court approved a purchase price of $140,000, $115,000 of which was designated as the value of the real estate.

erything else in the estate. Such an interpretation would have disastrous consequences and the Court specifically finds that such is not the intent of the Legislature;

8. That as such the Petition and Request for Partial Distribution by Harry Montgomery should be denied.

(R.270–71). Montgomery now appeals.[3]

## ISSUE

Montgomery offers four issues on appeal, all of which culminate in the single issue of whether the trial court erred in failing to grant Montgomery's petition for partial distribution on the basis that his life estate interest in one-third of the real property of the deceased, as a second or subsequent childless spouse who elected against the will pursuant to Ind.Code § 29–1–3–1, was subject to the payment of claims set forth in Ind.Code § 29–1–14–9.

## STANDARD OF REVIEW

■ We agree with Montgomery that the issue involves the interpretation of various sections of the probate code.[4] "The interpretation of a statute is a question of law to which we owe the trial court's holding no deference." *Figg v. Bryan Rental Inc.*, 646 N.E.2d 69, 72 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* We review questions of law and the trial court's legal conclusions under a de novo standard, substituting our judgment for the trial court's if necessary. *Battershell v. Prestwick Sales, Inc.*, 585 N.E.2d 1, 3 (Ind.Ct.App.1992), *trans. denied;* *Kintzele v. Przybylinski*, 670 N.E.2d 101, 102 (Ind.Ct.App.1996).

We recently provided a review of the well-established rules of statutory construction.

When construing a statute to determine the intent of the legislature, words and phrases are to be given their common and ordinary meaning. [Citation omitted]. If the language of a statute is clear and unambiguous it is not subject to judicial interpretation. [Citation omitted]. However, when the language is reasonably susceptible to more than one construction, we must construe the statute to determine the apparent legislative intent. [Citation omitted]. Statutory provisions cannot be read standing alone; instead, they must be construed in light of the entire act of which they are a part. [Citation omitted]. When the legislature enacts a statute, we presume it is aware of existing statutes in the same area. [Citation omitted].

*Town of Merrillville v. Merrillville Conservancy Dist. By and Through Bd. of Directors*, 649 N.E.2d 645, 649 (Ind.Ct.App. 1995), *reh'g denied, trans. denied. See also Seifert v. Bland*, 587 N.E.2d 1317, 1319 (Ind. 1992), *reh'g denied.*

## DISCUSSION AND DECISION

### Denial of Partial Distribution

■ We initially note that this appeal comes to us on the trial court's denial of a petition for partial distribution. IND.CODE § 29–1–17–1 provides that a court may order a partial distribution of an estate in varying circumstances. Subsection (a) allows the trial court, under certain circumstances and restrictions, to deliver to any distributee, who consents to it, possession of any specific real or tangible personal property to which he is entitled under the will or by intestacy. Subsection (b) allows for distribution at any time during the administration when it is apparent that the estate is solvent and that items of property are perishable in nature, would materially depreciate in value if distribution were delayed, or would necessitate the expenditure of estate funds for storage or preservation. Subsection (c) provides for a partial distribution after the expiration of time for filing claims. Any partial distribution can

---

**3.** We initially note that the denial of a partial distribution is not a final appealable order in that it does not put to rest all of the issues of the parties; nor is it an appealable interlocutory order within Ind.App.Rule 4(B). *Bell v. Wabash Val. Trust Co.*, 156 Ind.App. 476, 297 N.E.2d 924 (1973). However, given that the issues presented regarding the trial court's order will impact the final distribution of the estate and that the issues are fully briefed by both parties, we exercise our discretion in reviewing the appeal. Ind.App. Rule 4(E).

**4.** There is no relevant factual dispute between the parties.

be modified pursuant to § 29–1–17–2(b) to protect other distributees and claimants and the court may require security for return of property to the extent necessary to satisfy distributees and claimants who may be prejudiced. The Indiana Probate Code Study Commission's ("the Commission") comments indicate that this section was designed to partially address the criticism that it takes too long for a distributee to receive his or her share of the estate. The comments offer a hypothetical example wherein the amount due beneficiaries was safely established and a balance which was more than adequate to handle the questionable claims was retained by the estate.

In his petition for partial distribution, Montgomery requested that he receive the value of his life estate in one-third of the real estate. He arrived at dollar amounts for his shares of the two properties by multiplying a life estate value factor taken from the Federal Estate Tax Regulations by the net proceeds from the land sale of each property. He contended, as he does in this appeal, that his share of the real estate should not be subjected to the debts and expenses of the estate and that it vested immediately upon Cynthia's death.

■ A partial distribution under § 29–1–17–1 is at the discretion of the trial court. In light of the commission's comments that this section was to expedite distributions when the amount due beneficiaries was safely established, Montgomery fails to show that the trial court abused its discretion in failing to make a partial distribution. It is clear from the record of the proceedings as well as this appeal that Montgomery and the estate have a legitimate legal dispute regarding Montgomery's share of the estate. Additionally, Montgomery presented nothing in his petition indicating that if the requested distribution was made to Montgomery, the balance retained by the estate would be safe or adequate to handle questionable claims. An ultimate determination that Montgomery was entitled to his requested distributions would not alter the fact that the trial court faced a request for a questionable amount. We do not find an abuse of discretion by the trial court.

## Vesting of Realty Interest

■ Additionally, Montgomery contends that the holding of *In re Estate of White*, 651 N.E.2d 324 (Ind.Ct.App.1995), mandated a finding that his share of the real estate vested upon Cynthia's death thus requiring the trial court to grant his petition for partial distribution. We agree with the proposition that the surviving spouse's share of the real estate vests at death. *Id.* (citing *Swain v. Hardin*, 64 Ind. 85 (1878)). However, we do not agree that *White* required a partial distribution. *White* involved a dispute as to whether the value of the life estate of the decedent's second, childless spouse was based on the value of the real estate at the date of death or the date of sale. We held that the surviving spouse's share of the real estate vested upon decedent's death but that the value of that interest was to be determined on the date the property was sold. *Id.* at 326.

IND.CODE § 29–1–13–1 provides that the "personal representative shall have a right to, and shall take, possession of all the real and personal property of the decedent other than allowances under IC 29–1–4–1." In *Estate of Baker v. Lahrman*, 505 N.E.2d 104 (Ind.Ct.App.1987), *reh'g denied*, we noted that the purpose of § 29–1–13–1 was to prevent potential distributees from collecting funds until the court delivered possession under an order for distribution. *Id.* at 107. In *Helvey v. O'Neill*, 153 Ind.App. 635, 288 N.E.2d 553 (1972), we held that a distributee's interest could be sold prior to final settlement and the possibility that the real estate could be used to pay the unsettled debts of the estate did not affect the right of a vendee to maintain an action for partition. However, we also noted that "the [a]dministratrix was entitled to possession of the realty during estate administration and title vested in [the heir] subject to divestment should it be needed for the payment of claims, taxes, expenses of administration, etc., pursuant to I.C.1971, 29–1–15–3, Ind.Ann.Stat. § 7–903 (Burns 1953). [Citations omitted]." *Id.* 288 N.E.2d at 558–59.

Although Montgomery's life estate share of the real estate vested upon Cynthia's death,

this did not equate to a right of immediate possession of the proceeds from the sale of such real estate. Other than Montgomery's spousal allowance under § 29–1–4–1, the representatives of the estate were entitled to possession of the real estate or the proceeds from the sale thereof prior to the final distribution of the estate or order of the court. Therefore, any partial distribution was within the discretion of the trial court. Having previously found no abuse of discretion, we find no error in the trial court's denial of a partial distribution.

Montgomery's appeal, although acting on the denial of his petition for partial distribution, is an attack on the trial court's rationale for its denial. Since both parties on appeal address the trial court's rationale, the estate has submitted a proposed final accounting, and because the trial court will base its final distribution decision on its interpretation of the probate code, we will address the issue presented and briefed by the parties.

**Real Estate Share from Net Estate**

We must initially determine if the language of Ind.Code § 29–1–3–1 clearly and unambiguously indicates whether a second or subsequent childless spouse electing to take against the will receives his or her share of the life estate in the realty free from the various claims against the estate. The third chapter of title 29 is titled "TAKING AGAINST THE WILL" and provides, in part:

> (a) ... The surviving spouse, upon electing to take against the will, is entitled to one-half (½) of the net personal and real estate of the testator. However, if the surviving spouse is a second or other subsequent spouse who did not any time have children by the decedent and the decedent left surviving a child or children or the descendants of a child or children by a previous spouse, the surviving second or subsequent childless spouse shall upon such election take one-third (⅓) of the net personal estate of the testator plus a life

estate in one-third (⅓) of the lands of the testator. In determining the net estate of a deceased spouse for the purpose of computing the amount due the surviving spouse electing to take against the will, the court shall consider only such property as would have passed under the laws of descent and distribution.

> . . .

> (d) When a surviving spouse elects to take against the will, the surviving spouse shall be deemed to take by descent, as a modified share, the part of the net estate as does not come to the surviving spouse by the terms of the will. . . .

Ind.Code § 29–1–3–1. Additionally, the Indiana Probate Code Study Commission comments indicate that "[w]here the surviving spouse is the widow she shall take, in addition to the net one third received upon an election, the widow's allowance granted in Section 402 and the benefits allowed in Section 403." [5]

Montgomery argues that since the word "net" immediately precedes the words "personal" and "personal estate" but not the words "real estate" and "life estate in one-third (⅓) of the lands," the statute clearly provides that his share of the real estate should be free from claims of the estate.[6] The estate argues that the use of the term "net estate" to describe the surviving spouse's share in the second paragraph of subsection (a) and again in subsection (d) requires that Montgomery's life estate in one-third (⅓) of the realty is subject to expenses of administration and claims against the estate. The statutory definition of net estate "refers to the real and personal property of a decedent exclusive of the allowances provided under IC 29–1–4–1 and enforceable claims against the estate." Ind.Code § 29–1–1–3. Since both parties offer a plausible construction under the plain language of the statute, we will construe the statute to deter-

5. The widow's allowance and family allowance were supplanted by the surviving spouse's allowance now found at Ind.Code § 29–1–4–1.

6. In addition to the plain meaning arguments, both parties alternatively argue that an examina-

tion of additional statutory sections, the overall statutory scheme and policy arguments supports their statutory interpretation of Ind.Code § 29–1–3–1.

mine the legislative intent. *Town of Merrill-ville,* 649 N.E.2d at 650.[7]

In examining the Act as a whole, there are several statutory provisions which assist in ascertaining the legislative intent. IND.CODE § 29–1–7–23 provides that the estate property, *real and personal,* "shall be subject to the possession of the personal representative and to the election of the surviving spouse and shall be chargeable with the expense of administering the estate, the payment of other claims and the allowances under IC 29–1–4–1, except as otherwise provided in IC 29–1." This statute supports the general rule that "when a person dies his real and personal property are chargeable with the expenses of administering the estate, and with the payment of debts and expenses." *American Fletcher Nat. Bank and Trust Co. v. American Fletcher Nat. Bank & Trust Co.,* 161 Ind.App. 166, 171, 314 N.E.2d 810, 814 (1974).

■ Montgomery offers *Fiscus v. Moore,* 121 Ind. 547, 553, 23 N.E. 362, 364 (1890), to support his claim that the personalty of the estate must be exhausted before the proceeds of the real estate can be used to pay the claims of the estate. Such was the state of the law prior to the enactment of the Probate Code in 1953.[8] IND.CODE § 29–1–15–1 removed the previous distinction between real and personal property and provides that "there shall be no priority as between real and personal property, except as provided by the will, if any, or by the order of the court or by the provisions of IC 29–1–17–3." The Commission's comments indicate that "[t]his section practically removes all distinction between real and personal property in the administration of the estate." Montgomery's argument that the personalty must first be exhausted is without merit.

IND.CODE § 29–1–14–9, which classifies enforceable claims in order of preference in the event that the assets of the estate are insufficient to pay all claims in full, provides, in part:

(a) All claims shall be classified in one (1) of the following classes. If the applicable assets of the estate are insufficient to pay all claims in full, the personal representative shall make payment in the following order:

(1) Costs and expenses of administration.

(2) Reasonable funeral expenses....

(3) Allowances made under IC 29–1–4–1.

(4) All debts and taxes having preference under the laws of the United States.

(5) Reasonable and necessary medical expenses of the last sickness of the decedent, including compensation of persons attending him.

(6) All debts and taxes having preference under the laws of this state; ...

(7) All other claims allowed.

---

7. Montgomery makes similar contentions regarding § 29–1–2–1, emphasizing the lack of the words "net" or "net estate" prior to the words "life estate." The estate correctly notes that § 29–1–2–1 applies to intestate succession and is not controlling when a spouse elects against the will. However, § 29–1–2–1 is relevant to an extent due to the language in § 29–1–3–1 indicating that a surviving spouse who takes against the will is deemed to take by descent that part of the net estate that does not come by terms of the will. Therefore, it is noteworthy that IND.CODE § 29–1–2–1 is titled "Net estate: distribution" and provides for the distribution of the *net estate* of a person dying intestate. IND.CODE § 29–1–2–1(a).

8. *See generally,* I.L.E., *Executors and Administrators* § 177 (West 1959 & Supp.1996). Prior to 1953, the Probate Code provided that "[i]f the personal estate of a decedent shall be insufficient for the payment of the liabilities thereof, the real estate of the deceased, if any, shall be sold to make assets for the payment of such liabilities." Burns Annotated § 6–1107 (1933) (repealed) (as added by Acts 1881 (Spec.Sess.), ch. 45, § 107, p. 423). However, the 1953 Probate Code eliminated any such priority between real and personal property. "In determining what property of the estate shall be sold, mortgaged, leased or exchanged for any purpose provided in section 1503 [§ 7–903], there shall be no priority as between real and personal property, except as provided by the will, if any, or by order of the court or by the provisions of section 1703 [§ 7–1103]. [Acts 1953, ch. 112, § 1501, p. 295.]" Burns Annotated, § 7–901 (1953) (repealed). The Commission's comments, in noting that this section supplanted former Burns §§ 6–1107 and 6–1144, indicated that "[t]he effect of this section is to remove all distinction between real and personal property where it becomes necessary to sell or dispose of estate property to pay the debts and obligations of the estate."

IND.CODE § 29–1–14–9. This section specifically provides that the spousal allowance under § 29–1–4–1 is to receive priority over all claims except the costs and expenses of administration and reasonable funeral expenses. No such protection is afforded the surviving spouse's share of the real estate taken against the will or otherwise. However, IND.CODE § 29–2–2–1 specifically provides some degree of protection for the real estate interest of a widow.

IND.CODE § 29–1–2–2 provides, in part:

(a) Any interest acquired by a widow in the decedent's real estate, ..., whether by descent or devise, not exceeding one-third (⅓) of said decedent's real estate, shall be received by her, free from all demands of creditors: Provided, however, that where the real estate exceeds in value ten thousand dollars ($10,000), the widow shall have one-fourth (¼) only, and where the real estate exceeds twenty thousand dollars ($20,000) one-fifth (⅕) only, as against creditors.

*Id.* Subsection (b) makes this interest subject to liens on the real estate, including proper mortgagees which "shall take precedence over the interest of the widow." Additionally, subsection (c) indicates that subsection (a) will not prevent sale of the real estate under the provisions of the code, and in the event of a sale, the widow will receive her share from the proceeds.

Montgomery argues that Ind.Code § 29–1–3–1 should be interpreted in conjunction with IND.CODE § 29–1–2–2 to allow him at least a one-fifth interest in the real estate free from all creditor's claims except for mortgage and lien creditors of such real estate. Given the ambiguity of § 29–1–3–1, we agree that the statutory provisions should be read together. *Town of Merrillville,* 649 N.E.2d at 649.

Viewing the Act as a whole, the existence of IND.CODE § 29–1–2–2 would appear to preclude Montgomery's interpretation that the legislature intended, under § 29–1–3–1, to omit entirely the second or subsequent spouse's life estate share of the real estate from any debts or expenses of the estate. If the legislature intended § 29–1–3–1 to render the surviving spouse's share of the real estate exempt from any claims of the estate, § 29–1–2–2 would have no apparent purpose. There would be no need to exempt a portion of the widow's share of the real estate from creditors if § 29–1–3–1 exempted the entire spouse's share of the real estate from all claims. When the legislature enacts a statute, we presume it is aware of existing statutes in the same area. *Town of Merrillville,* 649 N.E.2d at 649. "[W]here two statutes address the same subject, they are in pari materia, and we strive to harmonize them where possible." *Freeman v. State,* 658 N.E.2d 68, 70 (Ind.1995) (citing *Schrenker v. Clifford,* 270 Ind. 525, 387 N.E.2d 59, 60 (1979)).

We do not agree that the statutory language in § 29–1–3–1 excludes the subsequent childless spouse's real property interest from the claims which are deducted in arriving at the net estate. Reading the various sections of the probate code conjunctively, we conclude that the legislature intended that a surviving spouse taking against the will pursuant to § 29–1–3–1 shall take his or her share of the net estate of both the personalty and the real estate. The sole purpose of the differentiation is to provide subsequent childless spouses with a lesser interest in the lands of the deceased, that being a life estate in one-third (⅓) of the real estate with the fee thereof vesting in the deceased's children. IND.CODE § 29–1–3–1. An examination of both statutory sections would indicate that the legislature did intend to exempt a portion of the widow's interest in the decedent's real estate from the demands of creditors, not including any mortgage liens on such property. However, this was to be accomplished by § 29–1–2–2.

■ When examining the Act as a whole, we hold that the legislature did not intend, under § 29–1–3–1, to protect the surviving spouse's share of the real estate from the debts and expenses of the estate. The surviving spouse's share of the real estate was to be taken from the net estate. However, we also determine that the legislative intent of IND.CODE § 29–1–2–2 was to protect a portion of the widow's share of the decedent's real estate from creditors, except mortgage or lien creditors.

**Partial Protection of Spouse's Real Estate Interest**

The legislature devised a statute to protect the widow's share of the real estate up to one-third (1/3) of the decedent's real estate; however, the use of the term "creditors" does not make clear whether this protection extended to expenses of administration and funeral expenses.[9] It is noteworthy that although the legislature specifically provided protection under IND.CODE § 29-1-14-9 to the spousal allowance provided in § 29-1-4-1, this protection did not extend to administrative and funeral expenses.

*Comer v. Light,* 175 Ind. 367, 93 N.E. 660 (1911), *reh'g denied,* involved the issue of whether proceeds received by the estate of the deceased from the sale of real estate devised to him by his father's will constituted real or personal property. After determining that the proceeds were to be treated as real property, our Supreme Court indicated:

> This being true, the wife was entitled to $500 and one-third the real estate, or the proceeds free from all demands of creditors.
>
> . . .
>
> The widow's $500 allowance and her statutory one-third in the real estate can only be reduced by the amount necessary to defray the expenses of administration, last sickness, and funeral of the deceased husband. Burns' Ann. St. 1908, § 2786, 2901, 2957.

*Id.* 93 N.E. at 663.

Additionally, there is an obvious public policy rationale for providing priority to administrative and funeral expenses in order to attain those services. In *Phillips v. Tribbey,* 82 Ind.App. 68, 141 N.E. 262 (1923), *reh'g denied,* the court found the decisive question to be whether an undertaker who buried the deceased can enforce his claim for such services against her estate where the surviving husband had sufficient property to satisfy the claim. We recognized that "[i]t is well settled that at common law the surviving hus-

band of a deceased wife was liable for the expenses of her last sickness and of her funeral. [Citations omitted]." *Id.* 141 N.E. at 262. Although the court noted that the ultimate liability of the wife's funeral expenses rested on the surviving husband, the court held that the undertaker could pursue his claim against the estate and provided supporting policy reasons:

> It is generally recognized that the law, on equitable principles and ground of public policy, imposes on the estate of every deceased person a liability for the reasonable cost of burying the body, usually designated as funeral expenses. [Citations omitted]. Being a matter which cannot be delayed, and ought not to be preceded by unseemly controversy, the law gives the undertaker who performs the service a right to assert his claim, in the first instance, at his election against the estate of the decedent, thus providing a means for securing prompt service, by relieving the one called upon to render the same from determining at his peril from what source he must make collection, and of the necessity of possible litigation to exhaust one before proceeding against another. [Citations omitted].

*Id.* 141 N.E. at 263.

The concern today is the same as it was at common law. Given these factors, we find that § 29-1-2-2 does not exempt the widow's share from the expenses of administration and funeral expenses but only from the other classes of creditors other than mortgage or lien creditors.

Having determined that, pursuant to IND.CODE § 29-1-2-2, a widow's interest in the decedent's real estate or a portion thereof is free only from the demands of creditors, not including mortgage or lien creditors, we encounter the question of whether the statute should apply equally to Montgomery as a widower. Montgomery offers little in the way of authority or argument regarding the application of IND.CODE § 29-1-2-2 to wid-

---

9. Montgomery concedes that IND.CODE § 29-1-2-2 and 29-1-3-1 are silent on whether the surviving spouse has to pay his or her proportional share of the estate's administration expenses and acknowledges that the Indiana Supreme Court

has held that administrative expenses must be proportionally paid from the surviving spouse's share of the deceased estate. (Appellant Brief, p. 23–24, citing *Comer v. Light,* 175 Ind. 367, 93 N.E. 660 (1911)), *reh'g denied.*

owers. He indicates that not applying the statute equally to widows and widowers "clearly violates the Equal Protection Clause of the United States Constitution" but offers only one case in support and argues that the totality of the Indiana probate code and case law entitled him to receive one-fifth of the real estate free from all creditors except mortgage holders.

We initially note that probate law in Indiana has undergone several changes regarding the protection afforded a surviving spouse. *See generally,* 2A GEORGE A. HENRY, THE PROBATE LAW AND PRACTICE OF THE STATE OF INDIANA, *Marital Property Rights* (7th ed. 1979 by J. Grimes & 1996 Supp.). Different treatment was afforded widows and widowers in the widow and family allowance provisions of the probate code until the Probate Reform Act of 1975. This differentiation was extinguished by the passage of IND. CODE § 29-1-4-1, effective in 1976, which provides for a spousal allowance of $8,500. This spousal allowance superseded the homestead allowance (IC 1971, § 29-1-4-1), the widow's allowance (IC 1971, § 29-1-4-2) and the family allowance (IC 1971, § 29-1-4-3) and provided the same treatment to both widows and widowers. Similarly, the 1953 Probate Code restructured the format of the law to combine many of the laws of descent which had previously provided differing sections for both the widow and the widower, in part due to the historical differences in property ownership rights between males and females.

In determining whether § 29-1-2-2 provides a distinction between widows and widowers that violates the Equal Protection Clause, Montgomery does not offer, nor do we find, a case which specifically addresses the issue. However, this court addressed the previous differing treatment of widows and widowers pertaining to the widow's allowance and the family allowance under former statutes IC 1971, §§ 29-1-4-1, -2, and -3. In *Matter of Parson's Estate,* 168 Ind.App. 580, 344 N.E.2d 317 (1976), a widower petitioned to recover the statutory widow's allowance and family allowance. In holding that the code provisions which made the widow's allowance and family allowance available to widows and not widowers did not violate the Equal Protection Clause of the Fourteenth Amendment, we discussed the standard of review then applied in equal protection cases.

> Despite contrary arguments, sex has not yet been determined to be a "suspect classification" by a majority of the United States Supreme Court so as to necessitate the application of the so-called high scrutiny test.... [T]he United States Supreme Court has expressly recognized that the equal protection standard of *Reed v. Reed* (1971), 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225, should be utilized. [Citation omitted]. In *Reed v. Reed, supra,* the unanimous court applied a test which Judge Buchanan in [*Indiana High School Athletic Ass'n v.*] *Raike, supra* [(1975) 164 Ind.App. 169, 329 N.E.2d 66], referred to as the sliding scale test. Under that approach, the classification must be justified by something more than any "reasonably conceivable" set of facts. Rather, it must rest upon some ground of difference having a *fair and substantial relation to the object of legislation.*

*Id.* 344 N.E.2d at 319. We also reviewed the Supreme Court's holding in *Kahn v. Shevin,* 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974), in which the Court upheld the constitutionality of a Florida statute which provided certain benefits to widows but not to widowers. In applying the "fair and substantial relation" test, we noted that the Court in *Kahn* wrote:

> "There can be no dispute that the financial difficulties confronting the lone woman in Florida or in any other State exceed those facing the man. Whether from overt discrimination or from the socialization process of a male-dominated culture, the job market is inhospitable to the woman seeking any but the lowest paid jobs.... While the widower can usually continue in the occupation which preceded his spouse in death, in many cases the widow will find herself suddenly forced into a job market with which she is unfamiliar, and in which, because of her former economic dependency, she will have fewer skills to offer."

*Estate of Parson,* 344 N.E.2d at 319-20 (quoting *Kahn v. Shevin,* 416 U.S. at 353-54, 94 S.Ct. at 1736-37). We indicated that "if

we were to declare the statutes unconstitutional, the result would be a complete abrogation of the widow's allowance and the family allowance a result not expressly desired by either party herein." *Id.* Additionally, *Estate of Parson* was decided with the knowledge that the widow's allowance and family allowance were repealed effective January 1, 1976 in favor of the survivor's allowance regardless of the sex of the surviving spouse. *Id.* 344 N.E.2d at 320, n. 1.

Montgomery's challenge is similar to the argument advanced in *Estate of Parson* but is brought in the present day context which is no longer analogous to the cultural climate that existed more than twenty years ago. In examining the protections for widows provided in IND.CODE § 29-1-2-2, we recognize that potential economic hardships still exist for widows. However, it can no longer be said that "there can be no dispute" that the widow faces greater financial difficulties. *Estate of Parson,* 344 N.E.2d at 319 (quoting *Kahn v. Shevin,* 416 U.S. at 353, 94 S.Ct. at 1736). We are aware that unfair disparities may exist in the job market but no longer agree that "the job market is inhospitable to the woman seeking any but the lowest paid jobs." *Id.* It is also noteworthy that although Montgomery has by no means provided a thorough argument in support of his equal protection violation claim, the estate fails to respond to this argument or the contention that § 29-1-2-2 should apply to widowers.

Additionally, we are not required, as was the *Parson* court, to completely abrogate the protection afforded the widows in § 29-1-2-2 if it is determined that the statute is violative of equal protection. *Portman v. Steveco, Inc.,* 453 N.E.2d 284 (Ind.Ct.App.1983) (striking only those portions of the statute rendering an unconstitutional preference for widows under the Workmen's Compensation Act). In *Portman v. Steveco, Inc.,* this court addressed the application of the equal protection clause provisions of the Federal and Indiana Constitutions to the Indiana's Workmen's Compensation Act. We held that the Act violated equal protection by employing gender-based discrimination to afford a presumption of dependency to widows while requiring widowers to establish dependency.

Although *Portman* addressed the Workman's Compensation Act, the court, recognizing that providing for needy spouses was an important government objective, indicated that discriminating against women wage earners and surviving males spouses itself did not substantially serve that statutory end. We indicated that "[s]urely the needs of surviving widows and widowers would be completely served either by paying benefits to all members of both classes or by paying benefits only to those members of either class who can demonstrate their need." *Id.* at 286. Having found the Act unconstitutional, we were confronted with whether to eliminate the preference afforded to widows or to extend the preference to widowers. Noting the dangers of judicial legislation, we nevertheless struck the invalid portions of the statute, thereby making widows and widowers presumptively dependent.

■ The state has expressed a policy of providing a surviving spouse with a portion of the deceased spouse's property owned at death. *Leazenby v. Clinton County Bank & Trust Co.,* 171 Ind.App. 243, 355 N.E.2d 861, 867. "The justification for this, is to secure a minimal means of sustenance for the surviving spouse, and to relieve the State of providing support in a situation where advanced age or infirmities make the surviving spouse unable to provide his or her own support." *Id.* Based on this policy and the rationale discussed above, we find no grounds to support the differing treatment of widows and widowers as having a fair and substantial relation to the object of § 29-1-2-2. We find no justification, nor does the estate advance one, for the preference to widows.

■ Similar to *Portman,* we are not confined to the option of completely abrogating the protection afforded to widows. We can determine whether to eliminate the protection afforded to widows or read the term "widows" to include widowers, thereby extending the protection to widowers. We believe that securing a level of sustenance for the surviving spouse and relieving the state, to a degree, of providing support, would be served by allowing protection from creditors of a share of the real estate to both spouses.

Therefore, although we find constitutional infirmity in applying the protection of § 29–1–2–2 only to widows, we hold that the provisions of § 29–1–2–2 can be made applicable to surviving spouses, and that it would be most closely in tune with legislative intent to do so. Accordingly, we hold the statute applies to all surviving spouses.

We affirm the trial court's denial of the petition for partial distribution and remand to the trial court for further proceedings consistent with this opinion.

STATON and BARTEAU, JJ., concur.