INDIANAPOLIS NEWSPAPERS, A DIVISION OF INDIANA NEWSPAPERS, INC., Appellant–Defendant and Crossclaim Plaintiff,

v.

INDIANA STATE LOTTERY COMMISSION, James F. Maguire, in his capacity as Director, Indiana State Lottery Commission, Appellees–Defendants and Crossclaim Defendants,

Indiana Grocery & Convenience Store Association, Indiana Retail Council, Inc., Kokolene Marketing Corporation, Village Pantry, LLC, Mills Super Markets, Scott's Food Stores, and Everybody's Oil Corp., Appellees–Plaintiffs.

No. 49A02–9911–CV–790.

Court of Appeals of Indiana.

Nov. 17, 2000.

Lee B. McTurnan, Jackie M. Bennett, Jr., Anne L. Cowgur, McTurnan & Turner, Indianapolis, IN, Attorneys For Appellant.

John D. Walda, Cathleen M. Shrader, Barrett & McNagny, Fort Wayne, IN; John M. Ross, Indiana State Lottery Commission, Attorneys For Appellees.

## OPINION

ROBB, Judge

Appellant-defendant/cross-claim plaintiff, Indianapolis Newspapers (the "Star"), appeals the trial court's decision dismissing appellees-defendants/cross-claim defendants, the Indiana State Lottery Commission and its director, James F. Maguire (collectively referred to as the "Lottery"), from a cross-claim brought by the Star under Indiana's Access to Public Records Act (the "APRA," codified at Indiana Code sections 5–14–3–1 through –10) and releasing the Lottery from further liability in the action. We affirm in part and reverse and remand in part, holding that the Lottery's counterclaim for interpleader was proper, but the trial court erred in discharging the Lottery from *all* liability in this action because the Star still has a potential claim for attorney fees against the Lottery dependent upon the outcome of the underlying litigation.

### Issues

The Star raises four issues for our review, which we restate as follows:

1. Whether the trial court properly denied the Star's Trial Rule 12(B)(6) motion with respect to the Lottery's counterclaim for interpleader;

2. Whether the trial court properly discharged the Lottery from the Star's APRA cross-claim and directed that the litigation proceed between the Star and the Retailers;

3. Whether the trial court properly discharged the Lottery from liability for the Star's attorney fees, costs and reasonable expenses; and

4. Whether certain findings of fact and conclusions of law were supported by the evidence.

### Facts and Procedural History [1]

In a letter dated May 7, 1999, a reporting coordinator from the Star requested

1. Oral argument was heard in this case on July 26, 2000, in Indianapolis, Indiana.

from the Lottery a "current list of all Hoosier Lottery ticket distributors (by name, address, city and zip code), and the revenue generated by each of those distributors during calendar year 1998," which request was made pursuant to the APRA. R. 19. The Lottery partially complied with the request, providing the Star with a diskette containing the name, address, city and zip code of each retailer, but claiming in a May 11, 1999 letter to the Star that the revenue information was "proprietary" and "exempt" from disclosure as a trade secret under [Indiana Code Section] 5–14–3–4(a)(4). R. 19. Counsel for the Star questioned this assertion in a May 13, 1999 letter expressing the Star's interest in resolving the matter amicably and preference not to have to sue the Lottery under the APRA to obtain the information. On May 21, 1999, however, the Lottery wrote the Star's counsel, reiterating its position that the requested sales figures are "proprietary" to the Lottery retailers, and stating that it would "not be a party to [the Star's] request to force the release of this sales information by using the Hoosier Lottery as the source" of the information. R. 23. With the May 21 letter, the Lottery also tendered a list of the "top twenty-five retailers," without revenue information, and a copy of a letter from the president of the Indiana Grocery and Convenience Store Association ("the Grocery Association") supporting the Lottery's position.[2] The Lottery also offered to provide "sales revenue delineated by zip code, generated over the last three calendar years." R. 23.

In response to the Lottery's denials, the Star requested an advisory opinion from the APRA Public Access Counselor ("PAC"). In an opinion issued July 21, 1999, the PAC observed that

[t]he General Assembly clearly stated its intent for the Hoosier Lottery and man-

dated the following policies: ... (4) That the commission be accountable to the general assembly and the people of Indiana through a system of audits and reports and by complying with financial disclosure, open meetings, and public record laws.

R. 26 (citing Ind.Code § 4–30–1–2). The PAC opinion discussed Indiana and federal law regarding the definition of a "trade secret," and noted that in an Illinois case directly on point, an appellate court rejected many of the same arguments as those raised by the Grocery Association and other retailers in the instant case,[3] and held that the retailers opposing disclosure must release sales information in response to a public records request. R. 30. The PAC concluded:

It is my opinion that a public agency must make reasonable efforts to provide any disclosable information maintained in a computer database.... In addition, the sales information received and maintained in the Hoosier Lottery's database is not a "trade secret" of its retailers under Indiana Code Section 5–14–3–4(a)(4) and therefore, must be disclosed upon request under the APRA.

R. 31.

On July 23, 1999, the Lottery wrote to the Grocery Association and other retailers opposing disclosure, expressing its "disappointment" with the PAC's opinion, but stating it would be "compelled to acquiesce" and "make reasonable efforts to prepare and provide the Star with the report requested." R. 32. *"Unless we receive an intervening court order,"* the Lottery Deputy Director wrote, "I anticipate delivering the requested report to the Star toward the end of next week." R. 32 (emphasis added). The letter concluded, "The Lottery certainly regrets being compelled to produce this information and ap-

---

**2.** The record does not contain a copy of the Grocery Association's letter, but the Lottery's May 21 letter references the Grocery Association's letter as an enclosure.

**3.** *See Cooper v. The Dep't of the Lottery,* 266 Ill.App.3d 1007, 203 Ill.Dec. 926, 640 N.E.2d 1299 (1994).

preciates your efforts in support of our position." R. 33. However, on July 30, 1999, the Lottery sent the following letter to the Star's counsel:

Earlier today [the Lottery was contacted by counsel for] a number of retailers selling Hoosier Lottery tickets [which counsel had been retained] to investigate the possibility of securing a court order precluding the Hoosier Lottery from releasing the information you have requested. He has asked us to delay the release of this information until Wednesday, August 4th. Given the substantial impact we believe the release of this information will have on these retailers, we at the Lottery feel that this is a reasonable request. We do not wish to rush the release of this information if an impartial review of the facts might cause a judge to feel that irreparable harm could be done to these retailers. If we do not receive a court order by the close of business on Tuesday, August 3rd, we will release the requested information to you on Wednesday, August 4th.

R. 99.

The following seven plaintiffs sued the Lottery on August 3, 1999: the Indiana Grocery & Convenience Store Association; Indiana Retail Council, Inc.; Kocolene Marketing Corporation; Village Pantry, LLC; Mills Super Markets; Scott's Food Stores; and Everybody's Oil Corp. ("the retailers"). They sued for injunctive relief to prohibit the disclosure sought by the Star.[4]

On August 13, 1999, the Star sought and received an order granting leave to intervene in the Plaintiffs' suit against the Lottery. On August 20, 1999, the Lottery filed a "Counterclaim for Interpleader," reciting its potential criminal liability if forced to release "confidential financial information," as well as its potential liability

to the Star for its attorney fees pursuant to Indiana Code section 5–14–3–9(h), and alleging that "the plaintiffs and [the Star] are the real parties in interest in this case."[5] R. 65. On September 1, 1999, the Star filed a 12(B)(6) motion to dismiss the Lottery's interpleader counterclaim and a brief in support thereof, arguing that the relief requested in the interpleader "would defeat the purposes of the APRA and deny [the Star] its statutory ... right to bring an action against [the Lottery] as the public agency that originally denied the request for the public records at issue and [its] right to recover attorneys' fees." R. 75–76.

On October 1, 1999, the trial court conducted a hearing on the interpleader and the Star's motion to dismiss. At the conclusion of the hearing, the trial court ordered the parties to submit proposed findings of fact and conclusions of law. On October 6, 1999, the trial court entered its judgment, ruling in pertinent part as follows:

### FINDINGS OF FACT

\* \* \* \* \*

6. On July 30, 1999, Lottery ... advised Star that counsel for [the Retailers] had contacted Lottery regarding his intention to bring legal action against Lottery to preclude the release of the requested information. Lottery advised Star that the information requested would be released to Star on August 4, 1999 unless legal action was taken prior to that date.

\* \* \* \* \*

9. On August 20, 1999, Lottery filed, pursuant to Trial Rule 22, a Counterclaim for Interpleader (subsequently amended on September 15, 1999) and tendered to the Court under seal the

---

4. This complaint was not made part of the record on appeal.

5. On August 20, 1999, the Lottery also filed its answer to the Star's cross-claim, admitting

in part that it had "not totally fulfilled [the Star's request] ..." but that it was "prepared to do so after issuance of the [PAC's] opinion when this lawsuit intervened...." R. 60.

information which is the subject of this litigation.

## CONCLUSIONS OF LAW

1. Pursuant to [Indiana Code section] 4–30–1–2(4), Lottery is subject to the [APRA].

2. Pursuant to [Indiana Code section] 5–14–3–3, Lottery is obligated to allow any person to inspect and copy its public records, subject to certain exceptions.

3. Pursuant to [Indiana Code section] 5–14–3–4(a), Lottery is prohibited from disclosing public records containing trade secrets.

4. A legitimate issue exists regarding whether the information at issue in this case is, or is not, a trade secret. This Court is the proper forum for the resolution of this issue.

5. "The purpose of Interpleader is to prevent the vexation of a multiplicity of actions." *Indianapolis Colts v. Mayor and City Council of Baltimore*, 741 F.2d 954, 957 (7th Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1753[, 84 L.Ed.2d 817] (1985) ... The multiple claims need not be meritorious; the threat of litigation is sufficient. *United Farm Bureau Family Life Insurance Co. v. Fultz*, 176 Ind. App. 217, 375 N.E.2d 601 (1978). 2 Harvey, Ind.Proc., Rules of Civil Proc. Anno. p. 273 (1987).

6. Lottery is exposed to a multiplicity of actions:

(a) potential liability for the damages which the retailers allege will occur upon the release of this information; and

(b) potential liability for the Star's attorney fees if Lottery refuses to release the information.

7. Lottery has surrendered to the Court the information at issue and *seeks to have the real parties in interest* (Star and [Retailers] ) litigate against each other to determine who is entitled to the information at issue.

8. Lottery's Counterclaim for Interpleader is sufficient under the provisions of Trial Rule 22(C).

9. [Retailers] having filed this cause of action to preclude disclosure of the information at issue, Lottery *properly withheld disclosure of said information prior to this court's adjudication of the issues raised by [Retailers] and Star.*

10. The focus of the Star's cause of action against Lottery is disclosure of the retailer specific sales information which information is now in the possession of the Court under seal. *Lottery's surrender of the information obviates the need for Lottery as a party.*

11. The Lottery's actions did not force Star to sue to secure disclosure. Disclosure by Lottery was forthcoming when this lawsuit was filed. Said lawsuit is not frivolous and presents a legitimate issue for resolution by this Court and disclosure is properly postponed until both sides can be heard and a full judicial review can be had.

12. The [Retailers] and Star are the proper parties necessary for such a full judicial review.

13. Lottery is not a necessary party for the resolution of the issues before the Court and *cannot reasonably be held liable for the on-going attorney fees of Star while the issues continue to be litigated.*

14. Litigation by Star would not have occurred but for the initiation of this lawsuit by plaintiffs. The [Retailers] brought the issue of disclosure or nondisclosure before the Court for resolution. Star did not need to be a party for the issue to be resolved. Star chose to intervene in order to be "at the table" when the issue was argued.

15. Equity demands that Lottery cannot be responsible for attorney fees incurred by Star for intervening in a

pending lawsuit which raised an issue which impacted Star's interest.

16. Based on the facts of this case, [Indiana Code section] 5–14–3–9(h) does not mandate Lottery's payment of Star's attorney fees.

## JUDGMENT

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. Lottery's Counterclaim for Interpleader is hereby granted.

2. Lottery and Maguire are discharged from liability as to the claims of the parties herein.

3. The information deposited under seal with the Court is continued sealed until further order of this Court.

4. This cause of action shall continue between [Retailers] and Star.

R. 129–33 (emphases added).

On November 1, 1999, the Star moved the trial court to amend the judgment in order to provide finality and appealability under Indiana Trial Rule 54(B), which the trial court did on November 4, 1999, in an order reading in part: [6]

(a) the Star may incur substantial expense and irreparable injury if the October 6, 1999 Judgment is erroneous and an appeal is delayed;

(b) the question of a citizen's rights under the Indiana Access to Public Records Act is a substantial question of law; and

(c) the motion for certification pursuant to [Indiana Appellate Rule] 4(B)(6) should be granted. . . .

R. 147.

### Discussion and Decision

#### I. The APRA

The APRA requires a public agency to disclose its public records upon request by any person. Ind.Code § 5–14–3–3. However, Indiana Code section 5–14–3–4 creates an exception for certain document types and declares that the public agency "may not" disclose such documents. The only exception relevant here is for "[r]ecords containing trade secrets." Ind.Code § 5–14–3–4(a)(4). A person who has been denied the right to inspect or copy a public record may file an action to compel the public agency to permit the person to inspect and copy the public record. Ind. Code § 5–14–3–9(d). The public agency must then notify each person who supplied any part of the disputed record that a request for release of the information has been denied. *Id.* Such persons are then entitled to intervene in any resulting litigation. *Id.* The court in which the action to compel is filed shall determine the matter *de novo*. Ind.Code § 5–14–3–9(e). The burden of proof for the nondisclosure of a public record is on the public agency that denies access to the record. Ind.Code §§ 5–14–3–1, –9(e).

Thus, had this case proceeded in the sequence contemplated by the statute, after the Lottery denied the Star's request pursuant to the APRA, the Star would have filed an action to compel release of the information, the Lottery would have notified the Retailers of the pending action, and the Retailers would (or at least could) have intervened in the action. That this case actually proceeded in a different manner, with the Retailers suing the Lottery first in a declaratory judgment action, and the Star intervening, does not change the effect of the statute. We are still left with an action in which the Star seeks release of information from the Lottery in which the Retailers have an interest.

#### II. Lottery's Counterclaim for Interpleader

The Star contends that the trial court erred in denying its Trial Rule 12(B)(6)

---

**6.** On the same date, the trial court also entered "Supplemental Findings of Fact and Conclusions of Law Concerning Trial Rule 54(B) Appealability" and an amended judgment.

motion to dismiss the Lottery's counterclaim for interpleader because the counterclaim was procedurally insufficient.[7]

### A.  Standard of Review

■ A complaint is not subject to dismissal unless it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts. *Bentz Metal Prods. Co., Inc. v. Stephans,* 657 N.E.2d 1245, 1247 (Ind.Ct.App.1995). The allegations of the complaint are taken as true and the plaintiff is entitled to all reasonable inferences which could be drawn therefrom. *Id.* On appeal from a denial of a motion to dismiss, we apply essentially the same standard as the trial court to see whether the trial court acted properly in denying the motions to dismiss pursuant to Trial Rule 12(B)(6). *Id.*

### B.  Sufficiency of Counterclaim for Interpleader

Indiana Trial Rule 22, governing interpleader, provides that "[p]ersons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability.... A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim." T.R. 22(A). Indiana Trial Rule 22(D) provides:

> Any party seeking interpleader, as provided in subdivision (A) of this rule, may deposit with the court the amount claimed, or deliver to the court or as otherwise directed by the court the property claimed, and the court may thereupon order such party discharged from liability as to such claims, and the action continued as between the claimants of such money or property.

**7.** The trial court did not expressly deny the Star's Rule 12(B)(6) motion, but by granting the Lottery's counterclaim for interpleader, it impliedly did so.

The following language cited by the Lottery regarding the nature of interpleader is instructive:

> Interpleader is remedial in nature, and interpleader statutes are to be liberally construed. Indeed, because interpleader advances the interests of wise judicial administration, some courts take the view that it should be furthered wherever possible. Thus, every reasonable doubt should be resolved in favor of a putative stakeholder's right to interplead.

45 Am.Jur.2d, *Interpleader* § 1, at 454–55 (1999) (footnotes omitted). However, we must also be mindful that the General Assembly has articulated a liberal construction policy for the APRA. Ind.Code § 5–14–3–1.

■ The Lottery's counterclaim for interpleader alleged that it is the defendant in an action filed by the Retailers, and also a defendant to the Star's cross-claim, both of which concern the Lottery's disposition of sales information concerning the Retailers. It further alleged that it is subject to liability to the Retailers if it releases confidential information, and is subject to liability for the Star's attorney fees if it does not release the information. Thus, the Lottery sought to tender the disputed information to the court and be discharged from the action, as the Retailers and the Star are the real parties in interest. The Star filed a Trial Rule 12(B)(6) motion to dismiss the counterclaim for interpleader, alleging that the counterclaim did not meet the requirements of Trial Rule 22.[8] The Star argues that because the Lottery "could have avoided liability" under APRA "by fulfilling its duty to disclose public records," it cannot avail itself of the multiple liability justification for interpleader. Brief of Appellant at 6.

**8.** The Star also alleged in its motion to dismiss that interpleader would "defeat the purposes of the APRA and deny the Star its statutory rights." R. 75. This particular prong of the Star's argument will be discussed in Section III below.

Because of the equitable nature of the interpleader device, it bears noting that there is some question as to whether the Lottery has come into equity with clean hands. The novel question presented by the procedural posture of this case is whether a public agency such as the Lottery should be permitted to "preempt" or foreclose its liability under the APRA by, in effect, "stalling" until it is sued (perhaps at its own behest), and then, only after legal proceedings have been instituted, "drop" the information like the proverbial hot potato under seal with the court, and escape (via the device of interpleader) unharmed by the controversy swirling around its stalling tactic and initial refusal. However, under these facts, it is not relevant that the procedural history of this case did not follow a normal course or that the Lottery's actions may have initially prompted the unusual course of events. Rather, because the APRA clearly contemplates that persons with claims to the requested information be included in any litigation, the Lottery is not precluded from seeking interpleader if it is otherwise proper.

"Interpleader is proper in cases such as a surety confronted by claims of subcontractors and materialmen which exceed the surety's contractual liability, conflicting claims of entitlement to the proceeds of a life insurance policy, or automobile insurers surrendering the maximum sum of their liability to the court for disposition to plaintiffs in an accident case. The issue of whether the interpleaded defendants' claims are adverse does not arise often ." *Indianapolis Colts v. Mayor and City Council of Baltimore*, 741 F.2d 954, 957 (7th Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985). "Interpleader is a suit in equity. Because the sole basis for equitable relief to the stakeholder is the danger of exposure to double liability or the vexation of conflicting claims, the stakeholder must have a real and reasonable fear of double liability or vexatious, conflicting claims to justify interpleader." *Id.* (citations omitted.)

The Seventh Circuit found that the Colts' characterization of [one party's] claim did not " 'meet a minimal threshold level of substantiality.' " *Id.* at 958 (citing 7 C. Wright & A. Miller, Federal Practice and Procedure § 1704). Because the Colts could not assert "a reasonable fear of multiple liability or vexatious, conflicting claims," interpleader jurisdiction was not proper, and the suit was dismissed. *Id.*

Clearly, the Lottery's particular use of interpleader in this case is novel. Instead of holding an amount of money to which two or more parties assert entitlement, as in the usual interpleader situation, here, the Lottery holds information to which one party claims as entitlement by statute and another party claims a proprietary interest. In each situation, the stakeholder is pulled in two different directions and may have no personal interest in the outcome other than knowing what to do with the stake. Thus, because we are to give interpleader a liberal construction, we can discern no reason why interpleader should not be used in such a way. The Star argues that even if interpleader may properly be employed in this context, the Lottery has nonetheless failed to meet the requirements of Indiana Trial Rule 22 in this case. We disagree.

The Star first argues that the Lottery has failed to meet the requirements of Trial Rule 22(A) by failing to "attempt to join any party or address a situation with a likelihood of conflicting results." Brief of Appellants at 29. Given the procedural posture of this case, there were no parties to join: the Star and the Retailers were already parties. Additionally, the claims of the Star and the Retailers against the Lottery were adverse: the Lottery could not do one thing to satisfy both parties. Either the Lottery released the information to the Star pursuant to its request and left the Retailers dissatisfied and with a possible claim against the Lottery, or the Lottery denied release of the information to the Star and left the Star with a claim

against the Lottery and a possible claim for attorney fees. The Star argues that because the Lottery "could have avoided liability" under the APRA "by fulfilling its duty to disclose public records," it cannot avail itself of the multiple liability justification for interpleader. Brief of Appellant at 6. However, the Star fails to recognize that the Lottery could only have avoided liability *to the Star* by such a course of action; the Lottery would still have been open to potential liability to the Retailers. The requirements of Trial Rule 22(A) were satisfied by the Lottery's counterclaim.

■ The Star also alleges that the Lottery failed to meet the additional requirement of Trial Rule 22(C) that "it prays that the parties interpleaded assert their claims against the party seeking interpleader and against each other." The Star and the Retailers had each already asserted their claims against the Lottery, and the Lottery's counterclaim for interpleader did request that it be discharged from this action, allowing the Star and the Retailers, as the "real parties in interest," to litigate against each other. This is sufficient to satisfy the requirements of Trial Rule 22(D). The trial court did not err in denying the Star's Rule 12(B)(6) motion to dismiss the Lottery's counterclaim for interpleader on the basis that the counterclaim was procedurally insufficient. We turn now to the *substantive* sufficiency of the counterclaim.

### III.  Discharging the Lottery

#### A.  Standard of Review

■ The Star asserts that we should apply a de novo standard of review because the trial court effectively entered summary judgment in the Lottery's favor by finding that it was not liable for attorney fees and discharging it from this action. The Lottery counters, however, that we "may review the trial court's action on a motion for permissive joinder or interpleader only for an abuse of discretion." *Euler v. Seymour Nat'l Bank,* 519 N.E.2d

1242, 1244 (Ind.Ct.App.1988). The Star makes a valid argument that the cases cited by the Lottery in support of the abuse of discretion standard involved interpleader in the context of a motion for permissive joinder as opposed to the facts of this case, in which the use of interpleader implicates a "substantive, statutory right to sue." Reply Brief of Appellant at 2 n. 1. As such, the Star argues, it is "equivalent to a judgment on the pleadings or summary judgment on the Lottery's counterclaim" a summary disposition of its rights that should be afforded a de novo review. *See, e.g., National R.R. Passenger Corp. v. Everton,* 655 N.E.2d 360, 363 (Ind.Ct.App.1995), *trans. denied* (ruling on judgment on the pleadings is subject to de novo review).

We agree with the Star that the trial court's disposition was akin to a summary judgment and will apply the standard of review applicable to such a determination. Thus, we must determine whether the Lottery was entitled as a matter of law to the judgment and the relief granted. *Meridian Mut. Ins. Co. v. Auto–Owners Ins. Co.,* 698 N.E.2d 770, 773 (Ind.1998). In making that determination, we construe the pleadings and evidence in the light most favorable to the Star as the nonmovant, and carefully scrutinize the judgment to assure that the Star is not "improperly prevented from having its day in court." *Butler v. City of Indianapolis,* 668 N.E.2d 1227, 1228 (Ind.1996). *See also United Farm Bureau Family Life Ins. Co. v. Fultz,* 176 Ind.App. 217, 224, 375 N.E.2d 601, 607 (1978) ("[s]ince the trial court held an evidentiary hearing on Farm Bureau's second motion to dismiss and considered matters outside the pleadings, the trial court was required by [Indiana Trial Rule] 12(B) to treat such motion as a motion for summary judgment.").

#### B.  Discharge Pursuant to Interpleader

The Star contends that the trial court erred in discharging the Lottery from this action pursuant to its counterclaim for interpleader. The Star argues:

[p]ermitting the Lottery, through interpleader, to remove itself from this case and shield itself from liability frustrates the purposes of the APRA, and even nullifies certain of its provisions, not only in this case but potentially in all similar subsequent cases. *A public agency has little incentive to disclose information pursuant to a citizen's APRA request if it can avoid its duty and liability under the Act through procedural maneuvering.*

Brief of Appellant at 25 (emphasis added).

■ Indiana Code section 5–14–3–1, setting forth the public policy underlying the APRA, provides:

A fundamental philosophy of the American constitutional form of representative government is that government is the servant of the people and not their master. Accordingly, it is the public policy of the state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. *This chapter shall be liberally construed to implement this policy and place the burden of proof for the nondisclosure of a public record on the public agency that would deny access to the record and not on the person seeking to inspect and copy the record.*

(Emphasis added). Our goal in construing a statute is to give effect to the legislative intent. *Robinson v. Indiana Univ.*, 659 N.E.2d 153, 155 (Ind.Ct.App.1995), *trans. denied* (citing Indiana Code section 1–1–4–1). Here, the intent is clearly spelled out for us: "The Act clearly indicates that the public is to have access to the affairs of government and the official acts of those who represent them." *Id.* at 156 (quoting *Heltzel v. Thomas*, 516 N.E.2d 103, 106 (Ind.Ct.App.1987), *trans. denied* ). In *Robinson*, we noted that the difficulty of the APRA is that "the legislature has articulated a liberal construction policy, yet has enacted a myriad of broad exceptions." *Id.* at 156. Thus, we concluded that "lib-

eral construction of a statute requires narrow construction of its exceptions," and further explained that a strict construction is effected "by placing the burden of proving the exception upon the party claiming it." *Id.* (quoting *Common Council of City of Peru v. Peru Daily Tribune, Inc.*, 440 N.E.2d 726, 729 (Ind.Ct.App.1982)).

The parties do not dispute that the Lottery is a "public agency" to which the APRA applies. *See* Ind.Code § 5–14–3–2(8) (defining "public agency" to include the "state lottery commission"). The Star cites the following provision of the APRA as "specific authorization" for its cross-claim against the Lottery:

A person who has been denied the right to inspect or copy a public record by a public agency may file an action in the circuit or superior court of the county in which the denial occurred to compel the public agency to permit the person to inspect and copy the public record....

Ind.Code § 5–14–3–9(d). Essentially, the Star argues that, because the statute places the burden of proving that nondisclosure of the public records sought by the Star was properly on the Lottery, discharging the Lottery contravenes the express terms of the APRA and impermissibly shifts the burden of proof to the Retailers.

The Lottery acknowledges that the statute permits the Star's claim, but has maintained throughout this litigation that the conflicting claims of the Star and the Retailers have placed it on the "horns of a dilemma": whether to comply with the APRA and risk criminal or civil liability to the Retailers, or reject the Star's APRA claim and risk liability for the Star's attorney fees. R. 93 (Lottery's Brief in Opposition to the Star's Motion to Dismiss Counterclaim for Interpleader). In its appellate brief, the Lottery cites the following portion of Indiana Code section 5–14–3–9(d):

Whenever an action is filed under this subsection, the public agency must noti-

fy each person who supplied any part of the public record at issue that a request for release of the public record has been denied. Such persons are entitled to intervene in any litigation that results from the denial.

The Lottery claims that this language demonstrates that "the APRA clearly contemplates circumstances in which, as here, the public agency holds records the nature of which is in dispute as between a member of the public requesting disclosure and the member of the public from whom the records originated or about whom the records concern." Brief of Appellees at 12. Thus, the Lottery's position is that the statute allows for it to be discharged from the action.

■ We agree, to a point, with the Lottery's assessment. It is not the Lottery's but the Retailers' claim of trade secrets that purportedly exempts the records from the statutory disclosure requirements. We can envision few reasons why the legislature would specifically provide for intervention by the person who supplied part of the public record other than to provide for that person to step into the shoes of the public agency which is asserting that person's rights and litigate the action on his own behalf. The burden of proof remains on the entity that is asserting that denial of access to the records is proper; regardless of who is actually defending the denial, the burden never shifts to the person seeking access. Thus, we see no error in discharging the Lottery from that part of the action that seeks to determine whether denial was proper, and leaving the Star and the Retailers to litigate that issue.

## C. Discharge on Attorney Fees

■ Although we hold that the trial court did not err in discharging the Lottery from this action for purposes of determining whether or not the public records at issue are a trade secret not subject to disclosure, we believe that the trial court did err in finding that the APRA does not hold the Lottery responsible for the Star's

attorney fees and discharging the Lottery from that liability. Indiana Code section 5-14-3-9(h) governs the award of attorney fees for prosecution of an APRA claim, and provides:

(h) In any action filed under this section, a court *shall* award reasonable attorney fees, court costs, and other reasonable expenses of litigation to the prevailing party if:

(1) the plaintiff substantially prevails; or

(2) the defendant substantially prevails and the court finds the action was frivolous or vexatious.

The plaintiff is not eligible for the awarding of attorney's fees, court costs, and other reasonable expenses if the plaintiff filed the action without first seeking and receiving an informal inquiry response or advisory opinion from the public access counselor, unless the plaintiff can show the filing of the action was necessary because the denial of access to a public record under this chapter would prevent the plaintiff from presenting that public record to a public agency preparing to act on a matter of relevance to the public record whose disclosure was denied.

(Emphasis added). The Lottery itself seems to concede that the statute mandates the Lottery's payment of at least a portion of the Star's attorney fees: the Lottery counters the Star's argument by stating that because it has "tendered the documents at issue to the trial court, it has substantially fulfilled its obligations under the [APRA] and, therefore, would not be subject for *any additional fees* after the documents were tendered." Brief of Appellees at 18 (emphasis added).

We make three important observations about the statute that affect our interpretation: first, the attorney fee provision of the APRA has recently been amended by the General Assembly to change the phrase "a court *may* award reasonable attorney fees, court costs, and other rea-

sonable expenses of litigation to the prevailing party," to "a court *shall* award" such fees, costs and expenses. Thus, the award of attorney fees is no longer discretionary, but mandatory, when the requirements of the statute are otherwise met. Second, we note that the statute does not require that the attorney fees be awarded to or from the public agency when it is clear that the statute contemplates the involvement of third parties. Third, the attorney fee provision is not triggered unless and until the person seeking disclosure has sought and received an advisory opinion from the PAC, except in a certain circumstance not applicable here. It is also important to note that the citizen has complete control over this step and that the opinion received need not be favorable to the citizen in order for him to proceed.

With these three things in mind, we interpret the attorney fee provision to mean that, if the Star substantially prevails in this action, the Lottery is liable for the Star's attorney fees from the time the PAC rendered her advisory opinion until the Lottery has made complete tender of the disputed documents to the trial court. After complete tender has been made, the Retailers become liable for the fees, unless there is later litigation concerning whether or not complete tender was in fact made, in which case the Lottery may again become liable for the Star's fees in litigating that issue. On the other hand, if the Retailers prevail, the Lottery will not be liable for any fees. Until the determination of whether or not denial of access was proper, however, the Lottery remains potentially liable for attorney fees and should

not have been discharged completely from this litigation.[9]

▪ Moreover, because the Lottery took the position in the trial court that it was not liable for any of the Star's attorney fees, the Star was required to continue litigating in this court the issue of whether the Lottery could avoid fee liability under the statute altogether. We have determined herein that, depending upon the outcome of the underlying litigation regarding whether or not denial of access was proper, the Lottery may be liable for a portion of the Star's attorney fees incurred in seeking disclosure. Thus, the Star has "substantially prevailed" in this court, and is entitled to an award of appellate attorney fees pursuant to the statute. *See* Ind.Code § 5–14–3–9(h)(1). We therefore remand to the trial court with instructions to hold a hearing for the purpose of hearing evidence regarding the attorney fees the Star has incurred in pursuing this appeal and making an appropriate appellate attorney fee award against the Lottery.[10]

### IV. The Trial Court's Findings of Fact and Conclusions Thereon

Finally, the Star argues that the trial court erred in entering findings of fact and conclusions of law that are contradicted by the evidence. The Star acknowledges that the entry of findings and conclusions in summary proceedings does not affect our standard of review. *See Rice v. Strunk,* 670 N.E.2d 1280, 1283 (Ind.1996) (findings and conclusions entered after summary proceedings "merely aid [the appellate

9. We acknowledge the potential in other cases for the person who supplied some part of the public record at issue to be a private individual upon whom an award of attorney fees would be a substantial burden and for whom the possibility of such liability could have a chilling effect on seeking intervention. However, this would not leave that person's interests without representation, as the public agency would have already independently determined that disclosure was improper prior to denying access, and would be compelled by

the statute to litigate the issue if the private person did not intervene.

10. We note that the Retailers were not involved in this appeal. Had they been, it might have been appropriate to apportion the Star's appellate attorney fees between the Lottery and the Retailers. However, as only the Lottery has participated in this appeal and protested the award of attorney fees, the entire burden of paying the Star's appellate attorney fees rests with the Lottery.

court's] review by providing ... a statement of the reasons for the trial court's actions."). The Star nonetheless argues that, because the findings and conclusions show an erroneous disregard for the provisions and purposes of the APRA, they require reversal. We, however, are inclined to agree with the Lottery that any error in the challenged findings and conclusions is harmless. The findings and conclusions attacked by the Star have been largely discussed in this opinion in other contexts, and therefore, we will not address them again. As we have not relied on the findings and conclusions or given them any deference in our decision, any error is, indeed, harmless.

### Conclusion

The trial court did not err in denying the Star's Rule 12(B)(6) motion to dismiss the Lottery's counterclaim for interpleader, or in finding that the counterclaim was procedurally sufficient. However, the trial court did err in discharging the Lottery from all liability in this action because the Lottery is still potentially liable to the Star for attorney fees depending upon the outcome of the litigation. Moreover, we hold that the Lottery is liable to the Star for its appellate attorney fees. Therefore, we reverse that part of the trial court's judgment which discharges the Lottery and remand for further proceedings consistent with this opinion.

Affirmed in part, reversed and remanded in part.

SHARPNACK, C.J., and BAILEY, J., concur.