**PORTER DEVELOPMENT, LLC and Eagle Services Corporation, Appellant–Defendant,**

**v.**

**FIRST NATIONAL BANK OF VALPARAISO, Appellee– Plaintiff.**

No. 64A04–0502–CV–95.

Court of Appeals of Indiana.

Nov. 22, 2005.

Rehearing Denied Jan. 31, 2006.

Steven W. Handlon, Margaret A. Williford, Handlon & Handlon, Portage, for Appellant.

Hugo E. Martz, Martz & Boyles, Valparaiso, Kent M. Frandsen, Carol Sparks Drake, Parr Richey Obremskey & Morton, Lebanon, for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Porter Development, LLC (Porter), appeals the trial court's grant of summary judgment in favor of Appellee–Plaintiff, First National Bank of Valparaiso (First National) and the trial court's denial of their Cross–Motion for Summary Judgment.[1] Additionally, First National appeals the trial court's denial of their claim for costs, expenses, and attorney's fees.

We affirm.[2]

---

1. In their brief and in the record on appeal, Porter lists Eagle Services, Corp. (Eagle Services), a defendant below, as an additional appellant in this case. However, Eagle Services is not appealing the trial court's final judgment.

2. We hereby deny Appellant's Motion for Oral Argument.

*ISSUES*[3]

Porter raises three issues on appeal, two of which we find dispositive and consolidate into the following one issue: Whether the trial court erred in finding that interpleader was appropriate.

On Cross–Appeal, First National raises one issue, which we restate as: Whether the trial court erred in finding that First National was not entitled to recover costs and expenses, including attorney's fees, pursuant to Ind.Code § 28–9–5–3.

*FACTS AND PROCEDURAL HISTORY*

On September 16, 2002, Porter deposited $100,000.00 (the deposit) with First National. The deposit was evidenced by a "Certificate of Deposit." (Appellant's App. pp. 35–36). On the same day, Porter and Eagle Services executed an "Assignment of Certificates of Deposit" (the assignment), wherein Porter agreed to assign the Certificate of Deposit to Eagle Services as collateral for a debt owed to Eagle Services. (Appellant's App. p. 37–39). On or about October 21, 2002, Eagle Services sent First National a copy of the assignment and a letter claiming an enforceable security interest in the Certificate of Deposit. Eagle Services advised First National that it would seek restitution and reimbursement from First National if they allowed Porter to "transfer, withdraw[,] or distribute the Certificate of Deposit without [Eagle Services'] signature and authorization." (Appellant's App. p. 33). On or about November 1, 2002, a representative of Porter obtained copies of Eagle Services' letter and the assignment. On December 5, 2002, two representatives of

Porter went to First National and requested to withdraw the deposit. First National denied the request. On the same day, Porter wrote a letter to First National demanding the release of the funds from the deposit and explaining that by refusing to release the funds to Porter, First National was committing conversion. On December 6, 2002, First National filed its Complaint for Interpleader requesting that Porter and Eagle Services be ordered to interplead together and that First National be relieved of any further responsibility. On the same day, the trial court found that interpleader was appropriate and ordered, "[First National] to pay the proceeds of [the] [Certificate of Deposit] to the Clerk of Porter County to be held until the [c]ourt determines and orders proper distribution thereof. Upon such payment over by [First National], [First National] is relieved from further responsibility as to said Certificate of Deposit." (Appellant's App. p. 41). Later that day, First National transferred the deposit to the Clerk of Porter County.

On February 13, 2003, Eagle Services filed its Answer asserting that it was entitled to the proceeds of the Certificate of Deposit. On March 6, 2003, Porter filed its Answer denying that Eagle Services had a security interest in the Certificate of Deposit and stating that it was improper for First National to file a complaint for interpleader. On the same day, Porter filed a counterclaim against First National alleging that First National's action in obtaining an interpleader order constituted conversion, breach of trust, breach of fiduciary duty, and breach of contract. On April 17, 2003, Porter filed an amended

3. In their brief, Porter raises the following third issue: "Whether [First National]'s misconduct in obtaining an *ex parte* interpleader order when it knew or should have known that it had no conceivable double or multiple liability constituted conversion, breach of trust, breach of fiduciary duty, breach of contract, and abuse of process?" However, this issue was not raised or even mentioned in the trial court and will not be discussed here for the first time on appeal. *Crafton v. State*, 821 N.E.2d 907, 912 (Ind.Ct.App.2005).

complaint alleging that First National's actions in obtaining the interpleader order also constituted an abuse of process.

On August 29, 2003, First National filed its Motion for Summary Judgment on Porter's Counterclaim. On October 15, 2003, Porter filed its Motion for Partial Summary Judgment against Eagle Services, claiming that Eagle Services did not have a valid and enforceable security interest in the Certificate of Deposit. Further, on October 17, 2003, Porter filed its Cross–Motion for Summary Judgment against First National seeking a determination that First National's Complaint for Interpleader was improper and that the Order of Interpleader should be vacated and set aside. On January 14, 2004, the trial court held a hearing on Porter's Motion for Partial Summary Judgment against Eagle Services, First National's Motion for Summary Judgment against Porter, and Porter's Cross–Motion for Summary Judgment against First National. Following the hearing, the trial court granted Porter's Motion for Partial Summary Judgment against Eagle Services, finding that the assignment of the Certificate of Deposit to Eagle Services was invalid as a matter of law, and that the Certificate of Deposit was owned by Porter and subject to no security interest. The trial court also granted First National's Motion for Summary Judgment finding that interpleader was appropriate, and subsequently denied Porter's Cross–Motion for Summary Judgment against First National. On December 23, 2004, the trial court granted Porter and First National's "Joint Motion for Modification of Order," ordering that the trial court's judgment on January 14, 2004, was final and appealable. (Appellant's App. p. 219).

Porter appeals and First National cross-appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION
### I. Standard of Review

■ We note that summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Fort Wayne Lodge, LLC. v. EBH Corp.*, 805 N.E.2d 876, 882 (Ind.Ct.App.2004). In reviewing a decision upon a summary judgment motion, we apply the same standard as the trial court. *Fort Wayne Lodge, LLC.*, 805 N.E.2d at 882. We do not reweigh the evidence designated by the parties. *Id.*

■ The moving party bears the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* Once this burden is met, the non-moving party must respond by setting forth specific facts demonstrating a genuine need for trial, and cannot rest upon the allegations or denials in the pleadings. *Id.* Additionally, Indiana Trial Rule 56(H) provides that "[n]o judgment rendered on the motion shall be reversed on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court." Consequently, we review only the designated evidentiary material in the record, construing that evidence liberally in favor of the non-moving party, so as not to deny that party its day in court. *Id.*

## APPEAL
### II. Interpleader

Porter contends that the trial court erred as a matter of law in finding that interpleader was appropriate. In support of this position, Porter argues that First National did not have a "real and reasonable fear" of double or multiple liability. Additionally, Porter asserts that inter-

pleader was inappropriate because they were not provided with an opportunity to be heard prior to the trial court's Interpleader Order.[4]

■ An interpleader action typically involves a neutral stakeholder, usually an insurance company or a bank, seeking apportionment of a common fund between two or more parties claiming an interest in it. *Euler v. Seymour Nat'l Bank*, 519 N.E.2d 1242, 1245 fn. 2 (Ind.Ct.App.1988). Actions in interpleader are governed by Indiana Trial Rule 22 (emphasis added), which provides in pertinent part:

(A) **Plaintiff or defendant.** Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff *is or may be exposed to double or multiple liability.*

(B) **Extension of statutory interpleader.** This rule shall extend, but not diminish or reduce the right to interpleader provided by statute.

(C) **Sufficiency of complaint or answer seeking interpleader.** A complaint or answer seeking interpleader under Rule 22(A) is sufficient if:

(1) it admits that a liability is owing or it states that a totally or partially unfounded liability is asserted to be owing to either one or more of the parties interpleaded;

(2) it declares that because of such claims the person seeking interpleader is or may be exposed to double or multiple liability; and

(3) it prays that the parties interpleaded assert their claims against the

party seeking interpleader and against each other.

. . .

(D) **Release from liability—Deposit or delivery.** Any party seeking interpleader, as provided in subdivision (A) of this rule, may deposit with the court the amount claimed, or deliver to the court or as otherwise directed by the court the property claimed, and the court may thereupon order such party discharged from liability as to such claims, and the action continued as between the claimants of such money or property.

As provided in Trial Rule 22(B), a party also has a right to statutory interpleader. Specifically, the Depository Financial Institutions Adverse Claims Act provides:

This article does not prevent a depository financial institution from interpleading and paying the funds that are the subject of an adverse claim into a court. If a depository financial institution pays the funds to the court, the depository financial institution is entitled to recover and collect the costs and expenses, including attorney's fees, incurred by the depository financial institution in the interpleader action.

I.C. § 28–9–5–3.

■ In *Indianapolis Newspapers, a Div. of Indiana Newspapers, Inc. v. Indiana State Lottery Comm'n*, 739 N.E.2d 144, 151 (Ind.Ct.App.2000), *reh'g denied, trans. denied* (citing 45 AM. JUR.2d, Interpleader § 1, at 454–55 (1999)), we noted that:

Interpleader is remedial in nature, and interpleader statutes are to be liberally construed. Indeed, because interplead-

---

4. Porter also argues that interpleader was inappropriate because they were not provided with notice of First National's Complaint prior to the trial court's Interpleader Order.

However, because Porter provides no relevant authority supporting this position we decline to address it. *See* Indiana Appellate Rule 46(A)(8)(a).

er advances the interests of wise judicial administration, some courts take the view that it should be furthered whenever possible. Thus, every reasonable doubt should be resolved in favor of a putative stakeholder's right to interplead.

We also recognized that "Interpleader is a suit in equity. Because the sole basis for equitable relief to the stakeholder is the danger of exposure to double liability or the vexation of conflicting claims, the stakeholder must have a *real and reasonable fear* of double liability or vexatious, conflicting claims to justify interpleader." *Id.* at 152 (emphasis added) (quoting *Indianapolis Colts v. Mayor and City Council of Baltimore,* 741 F.2d 954, 957 (7th Cir.1984), *cert. denied* ). Further, in *United Farm Bureau Family Life Ins. v. Fultz,* 176 Ind.App. 217, 375 N.E.2d 601, 608, fn. 5 (1978) (citing *A/S Krediit Pank v. Chase Manhattan Bank,* 155 F.Supp. 30, 33 (D.C.N.Y.1957)) we noted that in an interpleader action the multiple claims need not be meritorious; the threat of litigation is sufficient.

### A.   *Double or Multiple Liability*

Porter asserts that the trial court's Interpleader Order was inappropriate because First National did not have a real and reasonable fear of multiple or double liability. In support of their position Porter first argues that First National's fear of liability was unreasonable because First National was immune from any liability to Eagle Services pursuant to Indiana Code section 28–9–3–3(b), which provides in pertinent part:

A depository financial institution *may not be held accountable* to an adverse claimant for funds in a deposit account that are claimed by the adverse claimant unless the adverse claimant:

(1) serves on the depository financial institution written verified notice of the adverse claim . . . .

. . .

(2) serves on the depository financial institution notice of an adverse claim with a restraining order, an injunction, or another legal process . . . .

. . .

(3) furnishes to the depository financial institution, in form and with sureties acceptable to the depository financial institution, a bond indemnifying the depository financial institution from payment of damages, costs and expenses, and attorney's fees incurred by the depository financial institution . . . .

. . .

Based on this statute, Porter maintains that because the letter and assignment sent by Eagle Services to First National did not satisfy any of the three procedural requirements of Indiana Code section 28–9–3–3(b), First National could not have been held accountable to Eagle Services' claim, and thus did not have a real and reasonable fear of double or multiple liability.

Similarly, Porter asserts that First National's fear of liability to Eagle Services was not real and reasonable because Eagle Services did not have an enforceable security interest in the Certificate of Deposit. In particular, Porter argues that Eagle Services "Assignment of Certificate of Deposit" failed to comply with several of the contractual provisions that governed the manner and circumstances under which the Certificate of Deposit could be assigned. Porter directs us to the following language in the Certificate of Deposit:

TRANSFER: "Transfer" means any change in ownership, withdrawal rights, or survivorship rights, including (but not

limited to) any pledge or assignment of this account as collateral. *You cannot transfer this account without our written consent.*

**PRIMARY AGREEMENT:** You agree to keep your funds with us in this account until the maturity date.... *You may not transfer this account without first obtaining our written consent.*

. . .

**WITHDRAWALS AND TRANSFERS:** Only those of you who sign the permanent signature card may withdraw funds from this account. [. . .] The specified number of you who must agree to any withdrawal is written on page one in the section bearing the title "... Number of Endorsements ...."

. . .

The **NUMBER OF ENDORSEMENTS** needed for withdrawal or any other purpose is: 2.

(Appellant's App. pp. 35–36) (emphasis added).

Based on the language in the Certificate of Deposit, Porter claims that Eagle Services' assignment was invalid because it did not include First National's written consent and only included "one" signature. Accordingly, Porter asserts that because the assignment was invalid, First National did not have a real and reasonable fear of liability to Eagle Services.

■ Our review of the record reveals that on September 16, 2002, Porter and Eagle Services executed the assignment, wherein Porter agreed to assign its rights in the Certificate of Deposit to Eagle Services as collateral for a debt owed to Eagle Services. Thereafter, on or about October 21, 2002, Eagle Services sent First National a copy of the assignment and a letter notifying First National of their security interest in the Certificate of Deposit. Eagle Services advised First National that they would seek restitution and reimbursement from First National if any disbursements were made without Eagle Services' signature and authorization. The record further reveals that on December 5, 2002, after First National denied Porter's demand for payment of the Certificate of Deposit, Porter conveyed its intent to hold First National liable if it released the proceeds of the Certificate of Deposit to Eagle Services. As previously noted, every reasonable doubt should be resolved in favor of a putative stakeholder's right to interplead. *See Indianapolis Newspapers,* 739 N.E.2d at 151. Here, regardless of whether Eagle Services' assignment was valid or that they may have failed to properly comply with the procedural requirements of Indiana Code section 28–9–3–3(b), conflicting claims as to who rightfully owned the deposit and threats of litigation were made by both Eagle Services and Porter, thus possibly subjecting First National to double or multiple liability. Therefore, instead of taking the matter into their own corporate hands, First National invoked the judicial system to determine who rightfully owned the Certificate of Deposit. Because we find that First National was threatened with litigation by both parties, they had a real and reasonable fear of exposure to double or multiple liability. *See* Ind. Trial Rule 22(A); *United Farm Bureau,* 375 N.E.2d at 608, fn. 5.

### B. *Due Process*

■ Porter also contends that interpleader was inappropriate because they were not provided with an opportunity to be heard prior to the trial court's Interpleader Order. On the other hand, First National argues that Porter was not entitled to an opportunity to be heard prior to the trial court's Order pursuant to Trial Rule 22(D). We agree with First National.

The Fourteenth Amendment of the United States Constitution prohibits any state from depriving a person of life, liberty, or property without due process of law. Article I, Section 12 of the Indiana Constitution provides that "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." Indiana courts have consistently construed Article I, Section 12 of the Indiana Constitution as analogous to the federal due process clause. *See, e.g., Doe v. O'Connor*, 790 N.E.2d 985, 988 (Ind. 2003); *see also McIntosh v. Melroe Co.*, 729 N.E.2d 972, 976 (Ind.2000). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *McKinney v. McKinney*, 820 N.E.2d 682, 688 (Ind.Ct.App.2005) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). An opportunity to be heard includes the right to present evidence, confront adverse witnesses, make arguments, and receive judicial findings based upon the evidence and arguments. *Roy A. Miller & Sons, Inc. v. Industrial Hardwoods Corp.*, 775 N.E.2d 1168, 1171 (Ind.Ct.App.2002).

Trial Rule 22(D) (emphasis added) provides:

Any party seeking interpleader, as provided in subdivision (A) of this rule, may deposit with the court the amount claimed, or deliver to the court or as otherwise directed by the court the property claimed, *and the court may thereupon order such party discharged from liability as to such claims*, and the action continued as between the claimants of such money or property.

Here, First National filed its Complaint for Interpleader on December 6, 2002. On the same day, the trial court granted First National's request, discharged them from liability, and continued the action as between Porter and Eagle Services. Trial Rule 22(D) expressly permitted the trial court to take this action so that it could determine "at a meaningful time and in a meaningful manner" whether Porter or Eagle Services was the rightful owner of the Certificate of Deposit. *See McKinney*, 820 N.E.2d at 688. Thereafter, through a Motion for Summary Judgment, the trial court found that the Certificate of Deposit belonged to Porter. Moreover, although unsuccessful, Porter filed a cross-motion for summary judgment claiming that First National's Complaint for Interpleader was improper. Clearly, Porter was not denied the opportunity to be heard nor deprived of their property. Accordingly, we find that the trial court did not error in finding that interpleader was appropriate.

## CROSS–APPEAL

### III. *Costs, Expenses, and Attorney's Fees*

On Cross–Appeal, First National claims that the trial court erred as a matter of law in not awarding them the costs, expenses, and attorney's fees they incurred as a result of this interpleader action. Specifically, First National claims that Indiana Code section 28–9–5–3 mandates payment of these costs and fees.

The interpretation of a statute is a question of law reserved for the courts. *State v. Rans*, 739 N.E.2d 164, 166 (Ind.Ct.App.2000), *trans. denied.* Appellate courts review questions of law under a *de novo* standard and owe no deference to a trial court's legal conclusions. *Id.* If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Montgomery v. Estate of Montgomery*, 677 N.E.2d 571, 574 (Ind.Ct.App.1997). However, when the language is susceptible to more than one construction, we must construe the statute to de-

termine the apparent legislative intent. *Id.* In this respect, the task of appellate courts has been summarized as follows:

> We ascertain and implement legislative intent by "giving effect to the ordinary and plain meaning of the language used in the statute." The statute is examined and interpreted as a whole and the language itself is scrutinized, including the grammatical structure of the clause or sentence at issue. Within this analysis, we give words their common and ordinary meaning, without "overemphasizing a strict literal or selective reading of individual words."

*Clifft v. Ind. Dep't of State Revenue*, 660 N.E.2d 310, 316 (Ind.1995) (internal citations omitted), *remanded and affirmed on other grounds by Clifft v. Ind. Dep't of Revenue*, 748 N.E.2d 449 (Ind.Tax 2001). Finally, with respect to the statute at issue, we observe that "Indiana adheres to the 'American Rule' with respect to the payment of attorney fees and requires that parties pay their own attorney fees absent an agreement between the parties, statutory authority, or rule to the contrary." *Shepherd v. Carlin*, 813 N.E.2d 1200, 1203 (Ind.Ct.App.2004) (quoting *Courter v. Fugitt*, 714 N.E.2d 1129, 1132 (Ind.Ct.App. 1999)).

■ The statute in question, Indiana Code section 28–9–5–3 (emphasis added), provides:

> This article does not prevent a depository financial institution from interpleading and paying the funds that are the subject of an adverse claim into a court. If a depository financial institution pays the funds to the court, the depository financial institution is *entitled* to recover and collect the costs and expenses, including attorney's fees, incurred by the depository financial institution in the interpleader action.

First National maintains that because "entitle" means "To grant a legal right to or qualify for[,]" the trial court had no choice but to award them all costs and expenses, including attorney's fees, that they incurred as a result of this interpleader action. *See* BLACK'S LAW DICTIONARY 573 (8th ed.2004). We disagree.

■ Whether costs, expenses, and attorney's fees are mandatory under Indiana Code section 28–9–5–3 is a matter of first impression in Indiana. Here, First National does not proffer, and our research does not reveal any Indiana case law supporting First National's argument that the word "entitle" within a statute is of a mandatory nature. Nevertheless, when our legislature deems an award of attorney's fees to be mandatory the word "shall" or "must" is included within a statute. *See Shepherd*, 813 N.E.2d at 1203; *Cox v. Town of Rome City*, 764 N.E.2d 242, 250–51 (Ind.Ct.App.2002); *Metro. Sch. Dist. of S.W. Allen County v. Allen County*, 753 N.E.2d 59, 66 (Ind.Ct.App.2001); *Indianapolis Newspapers*, 739 N.E.2d at 155–56. Contrary to the authority above, Indiana Code section 28–9–5–3 does not contain the words "shall" or "must," and we do not interpret its language to imply that every time a Depository Financial Institution files a complaint for interpleader they are guaranteed a reimbursement for any costs, expenses, and attorney's fees they may incur. Holding otherwise would contradict a liberal construction of the statute and might encourage an abuse of the interpleader statute where a Depository Financial Institution files a complaint for interpleader regardless of the merits of the claims. *See Indianapolis Newspapers*, 739 N.E.2d at 151. Therefore, although First National, as a Depository Financial Institution, may have qualified for the right to seek the costs, expenses, and attorney's fees incurred as a result of the

interpleader action, we find that the legislature intended for the courts to have discretion under Indiana Code section 28–9–5–3 to determine whether such an award should be granted. Accordingly, we conclude that the trial court did not err in denying First National's claim for costs, expenses, and attorney's fees.

## CONCLUSION

Based on the foregoing we conclude that the trial court did not err in granting First National's Motion for Summary Judgment and denying Porter's Cross–Motion for Summary Judgment. Additionally, the trial court did not err in denying First National's claim for costs, expenses, and attorney's fees.

Affirmed.

BAKER, J., concurs.

MATHIAS, J., concurring in part and dissenting in part with separate opinion.

MATHIAS, Judge, concurring in part and dissenting in part.

Although I fully concur with the majority as to the issues presented in the appeal of Porter Development, LLC and Eagle Services Corporation, I respectfully dissent from the majority's denial of the First National Bank of Valparaiso's request for costs, expenses and attorney fees in its cross-appeal.

First National Bank correctly refers to the statutory language of Indiana Code section 28–9–5–3 in making its argument:

If a depository financial institution pays the funds to the court, the depository financial institution is entitled to recover and collect the costs and expenses, including attorney's fees, incurred by the

depository financial institution in the interpleader action.

The majority does not find that First National Bank is not a depository financial institution under the statute, and specifically finds that the bank correctly resorted to the interpleader process in this case. Rather, they parse the word "entitled."

Indiana Code section 1–1–4–1(1) sets forth the applicable rule of construction:

Words and phrases shall be taken in their plain, or ordinary and usual, sense. Technical words and phrases having a peculiar and appropriate meaning in the law shall be understood according to their technical import.

The majority does not assert that "entitled" is a technical word or part of a technical phrase so as to remove it from its "plain, ordinary and usual, sense."

The "plain, ordinary and usual, sense" or meaning of a word is commonly and most easily found in a dictionary. While the Black's Law Dictionary definition of "entitle" argued by First National Bank is accurate and supports the bank's position, the "plain, ordinary and usual, sense" of the word is even stronger and should control.

The relevant definition of "entitle" from the Merriam–Webster Online Dictionary is "to furnish with proper grounds for seeking or claiming something [this ticket entitles the bearer to free admission]."[5] In the same source, the relevant definitions of the noun "entitlement" are: "a: the state or condition of being entitled: RIGHT b: a right to benefits specified especially by law or contract."

Similarly, the Cambridge International Dictionary of English defines the verb "en-

---

**5.** *See* Merriam–Webster Dictionary website *available at* http://www.m-w.com/dictionary

(last visited on November 8, 2005).

title" as "to give someone the right to do or have something" and the noun "entitlement" as "something that you have right to do or have, or when you have the right to do or have something." [6] Review of other dictionaries yields much the same results.

In light of our basic rule of statutory construction under Indiana Code section 1–1–4–1, we need not require that the magic words "shall" or "must" appear in order to "entitle" a party to enforce the clear meaning of the statute at issue.

**6.** Cambridge International Dictionary of English website *available at* http://dictionary.cambridge.org (last visited on November 8, 2005).